IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CASTRO LAW, LLC,** | ) | CASE NO. 1:24 CV 00815 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| **JGW DEBT SETTLEMENT, LLC,** | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER DENYING |
| Defendant. | ) | PLAINTIFF'S MOTION FOR |
| | ) | RECONSIDERATION OF THE |
| | ) | COURT'S ORDER GRANTING |
| | ) | DEFENDANT'S MOTION TO |
| | ) | STAY PENDING ARBITRATION |

This matter is now before the Court on Plaintiff Castro Law, LLC's *Motion for Reconsideration of Granting JGW's Motion to Stay Pending Arbitration* (ECF #25), which asks the Court to reconsider and vacate its June 11, 2024 *Order* (ECF #24), which order: (1) granted Defendant JGW Debt Settlement, LLC's *Motion to Stay Pending Arbitration* (ECF #14); (2) stayed the case in its entirety pursuant to the Federal Arbitration Act; (3) granted Defendant JGW's *Motion for Protective Order* (ECF #23); and (4) cancelled a hearing scheduled for June 18, 2024 on Plaintiff Castro Law's *Motion for Preliminary Injunction* (ECF #1-4).

For the reasons set forth below, Plaintiff Castro Law's *Motion for Reconsideration of Granting JGW's Motion to Stay Pending Arbitration* (ECF #25) is DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Filing of the Complaint for Injunctive Relief

On May 1, 2024, Plaintiff Castro Law, LLC ("Castro Law") commenced this action by filing a complaint in the Court of Common Pleas for Cuyahoga County, Ohio, against Defendant JGW Debt Settlement, LLC ("JGW"). (ECF #1-4, *Complaint and Request for Injunctive Relief*).[1] The three-count complaint alleged substantive counts of "Repudiation of the Agreement" (Count I) and "Breach of Contract" (Count II), and sought immediate injunctive relief (Count III) pending mediation and/or arbitration of the substantive claims. (ECF #1-4). The "Agreement" at issue is a document titled "Service Agreement."[2]

The complaint filed by Castro Law acknowledged that the Service Agreement contained a mandatory mediation and arbitration provision for the resolution of all disputes. (ECF #1-4, ¶ 3). The mandatory mediation and arbitration provision is found at Section 8(f) of the Service Agreement. (ECF #1-2, PageID #29-#30). Notably, it is the only subsection in the entire 17-page Service Agreement to be highlighted in original boldfaced text. Because that section is the central focus of the matter as it exists before this Court, it is set forth below, in full:

---

[1] ECF Docket entry "ECF #1" is a combined federal docket entry combining: *Notice of Removal* (ECF #1); *Declaration of Lori Lasher*, identifying attached documents (ECF #1-1); *Service Agreement* (ECF #1-2); *Proposed Order Granting TRO* (ECF #1-3); *State Court Documents (Cuyahoga County Court of Common Pleas Case No. CV-24-996863)*, which includes the *Complaint and Request for Injunctive Relief* (ECF #1-4); and *Civil Cover Sheet* (ECF #1-5).

[2] The Service Agreement is a customer service and administrative support service agreement whereby JGW performed customer service and administrative support related to clients who had engaged Castro Law in connection with debt relief matters. The Service Agreement defines the relationship between Castro Law and JGW.

> **Mediation and Arbitration.** Subject to the provisions of Sections 4(d) and 5(i), each Party hereby agrees that in the event of any dispute arising out of or by reason of this Agreement, regardless of the facts or legal theories which may be involved, the Parties will first attempt to resolve such dispute by non-binding professional mediation under mutually agreeable procedures with the costs charged by the professional mediation service shared equally by both Parties. In the event that such mediation is unsuccessful or does not occur within thirty (30) days following written demand therefor by a party, the Parties shall submit such dispute to confidential binding arbitration in Cleveland, Ohio before the American Arbitration Association, pursuant to the Federal Arbitration Act (9 U.S.C. § 1, et. seq.). Each Party shall bear the fees, costs and expenses of such Party's legal counsel, witnesses and specialists. The arbitrator's award in any such proceeding shall be final and binding, and a judgment upon such award may be enforced by any court of competent jurisdiction. <u>Each Party hereby agrees to submit to the jurisdiction of any state or federal court sitting in Cleveland, Ohio in any action or proceeding arising out of or relating to the enforcement of the arbitration provisions of this Agreement.</u> Each Party hereby agrees to waive any defense of inconvenient forum to the maintenance of any action or proceeding so brought in Cleveland, Ohio, and each Party waives any bond, surety, or other security that may be required of any other Party with respect thereto. In the event a Party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other Party is entitled to costs of suit, including reasonable attorneys' and paralegals' fees and costs for having to compel arbitration or defend or enforce the award. Each Party hereby agrees that any dispute regarding the arbitrability of this Agreement, including without limitation any dispute relating to the interpretation, applicability, enforceability, conscionability or formation of this Agreement and of this arbitration requirement set forth in this Section 8(f), shall be governed by the Federal Arbitration Act and shall be resolved exclusively by the arbitrator.

(ECF #1-2, *Service Agreement*, § 8(f), PageID #29-#30) (boldface text and emphasis in original).

Castro Law's asserted ground for filing an injunction claim in the Common Pleas Court (later removed to this Court), notwithstanding the mandatory arbitration provision set forth in Section 8(f) of the Service Agreement, was language set forth in Section 5(i) of the Service Agreement, (ECF #1-2, Service Agreement, § 5(i), PageID #25), which allows for court enforcement of injunctive relief related to the confidentiality and handling of certain information

described in Sections 5(a)-(h) of the Service Agreement (ECF #9-3, PageID# 226-229). That section provides, in full:

> Enforcement by Injunction. Notwithstanding Section 8(f) hereof, each of LAW FIRM [Castro Law] and SERVICER [JGW] acknowledges that (i) the protections set forth in this Section 5 are of vital concern to the Parties, (ii) any violation hereof would cause irreparable harm to the other party, (iii) monetary damages for any violation hereof would not be adequate compensation, (iv) the restrictions set forth herein will not prevent either of LAW FIRM or SERVICER from conducting business, and (v) the covenants set forth herein are a vital part of the negotiations between the Parties and that no Party would have entered into this Agreement without agreement thereto. Accordingly, each of LAW FIRM and SERVICER agrees that the restrictions set forth in this Section 5 are reasonable in terms of duration and scope and that, in addition to any other remedy, such restrictions may be enforced by injunction proceedings (without the necessity of posting bond) to preserve the status quo, restrain a violation thereof and to compel specific performance with respect thereto, whether or not this Agreement has terminated.

(ECF #1-2, *Service Agreement*, § 5(i)) (identifying inserts supplied).

On May 7, 2024, JGW removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. As a result, the case came before this Court on the pending *Plaintiff Castro Law, LLC's Motion for Temporary Restraining Order and Preliminary Injunctive Relief* (ECF #1-4). Three weeks later, on May 28, 2024, JGW filed *Defendant JGW Debt Settlement, LLC's Motion to Stay Pending Arbitration*. (ECF #14).[3]

Among the grounds for the *Motion to Stay* was that Plaintiff Castro Law had since commenced an arbitration before the American Arbitration Association ("AAA"), on May 26, 2024 (AAA Case No. 01-24-0005-6666), seeking the *exact same* relief it sought in the injunction

---

[3] After the filing of the initial *Motion to Stay*, on June 10, 2024, JGW filed a *Defendant JGW Debt Settlement, LLC's Supplemental Memorandum in Further Support of its Motion to Stay Pending Arbitration and Opposition to Plaintiff Castro Law, LLC's Motion for Injunctive Relief* (ECF #22).

filing that was sent to this Court on removal, *including the claim for injunctive relief.* (ECF #14-3, PageID #455-457, now stated as "Count IV" in the *Demand for Arbitration and Request for Injunctive Relief* filed with the AAA).[4]

### B. The Court's Stay of the Case Pending Arbitration

On June 4, 2024, the Court held a Status Conference in this matter, after which it issued the following *Minutes of Proceedings*, stating: "***Telephonic status held with all counsel participating. . . . Preliminary Injunction Hearing set [for] 6/17/24 @ 9:30 am [later rescheduled to June 18] in the event the Court does not send case to ARBITRATION pursuant to parties' contract.***" (ECF #18) (insert and emphasis supplied).

On June 11, 2024, this Court entered its *Order: (1) Granting Motion to Stay Pending Arbitration; (2) Staying Case in its Entirety Under the Federal Arbitration Act; (3) Granting Motion for Protective Order; and (4) Cancelling Preliminary Injunction Hearing Set for June 18, 2024* (ECF #24).

On June 12, 2024, Castro Law filed its *Motion for Reconsideration of Granting JGW's Motion to Stay Pending Arbitration* (ECF #25), asking that the Court reconsider and vacate its June 11, 2024 *Order*.[5]

---

[4] In addition to the claims made in the *Complaint* initially filed in State Court, in the arbitration filing, Castro Law added a new "Count III" asserting a claim of tortious interference against JGW. (ECF #14-3, PageID #454-#455).

[5] The Court addresses here the statement, found at page 2 of Castro Law's *Motion for Reconsideration*, that Castro Law was not given an opportunity to oppose JGW's *Motion to Stay Pending Arbitration.* (ECF #24, PageID #719). The Court issued its June 11, 2024 *Order* fourteen days after service of the *Motion to Stay Pending Arbitration* (ECF #14) filed by JGW on May 28, 2024, after the close of the business day. A key factor driving issuance of the *Order* at the close of business on that day was the previous day's filing of a *Motion for Protective Order*

## II. LEGAL ANALYSIS

### A. Castro Law's Motion for Reconsideration

In the Sixth Circuit, motions for reconsideration are strongly disfavored and are appropriate only in rare, very limited, circumstances, as a high standard for granting such a motion applies. *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 809 (N.D. Ohio 2010). "In the Northern District of Ohio, a court may grant a motion for reconsideration if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *Estate of Rodriguez v. United States*, No. 13-01559, 2017 U.S. Dist. LEXIS 61752, at *2 (N.D. Ohio Apr. 24, 2017); *Cequent Trailer Prods. v. Intradin (Shanghai)*

---

(ECF #23) filed by JGW in response to extensive "discovery requests" propounded by Castro Law on June 5, 2024, comprised of broad interrogatories (demanding a response within three days) and equally broad document requests (also demanding a response within three days), along with a notice of Federal Rule 30(b)(6) depositions to JGW to commence the *following morning* (on June 12), another Rule 30(b)(6) deposition notice to commence the day afterward (on June 13), and a third-party document and deposition subpoena (also to commence on June 13). The substance of these "discovery requests" made clear Castro Law's intention to use the "injunction hearing" to litigate the tortious interference claim filed before the AAA (a claim not even made in the *Complaint* before this Court), as contained in its *Demand for Arbitration and Injunctive Relief* (ECF #14-3) filed with the AAA.

By that point in the case, Castro Law had stated its positions pertinent to the *Motion to Stay numerous times*: (i) in its initial filing (ECF #1-4, *Complaint for Injunctive Relief*); (ii) in a supplemental filing (ECF #6, *Supplemental Memorandum of Law in Support of its Motion for Temporary Restraining Order and Preliminary Injunction*); (iii) in its *Reply in Support of Motion for TRO and Preliminary Injunction* (ECF #15); and (iv) in its arguments made to the Court during the June 4, 2024 status conference (ECF #18, *Minutes of Proceedings*).

By the time of this Court's June 11, 2024 *Order*, it was clear that the arguments Castro Law sought to advance at the "injunction hearing" were inextricably tied to the interpretation and resolution of factual and legal issues within the sole domain of the mandatory mediation and arbitration provisions of Section 8(f) of the Service Agreement, and well beyond the limited injunction exception set forth in Section 5(i) of that agreement. Nevertheless, this Court issued an *Order* on June 13, 2024 directing JGW to file a response to Castro Law's motion for reconsideration and for Castro Law to file a reply if it so wished. (ECF #26).

*Mach. Co., Ltd.*, No. 1:05-CV-2566, 2007 U.S. Dist. LEXIS 33393, at *5 (N.D. Ohio May 7, 2007) (same). "The term 'clear error' is not well-defined in the Sixth Circuit, but it does 'clearly indicate[] that a high standard applies.'" *Forman v. Meridian Bioscience, Inc.*, 387 F. Supp. 3d 791, 796 (S.D. Ohio 2019) (quoting *Lonardo*, 706 F. Supp. 2d at 809).

"It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple. Rather, the standard for granting a . . . motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Schaffer v. Horizon Pharma PLC*, No. 16-CV-1763, 2016 U.S. Dist. LEXIS 83175, at *3-*4 (emphasis supplied, insert and omission in original).

The Court begins its analysis by noting that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Agilysys, Inc. v. Decisionpoint Int'l LLC*, Case No. 1:09-CV-0410, 2009 WL 10687999, at *4 (N.D. Ohio Oct. 14, 2009).

The injunctive relief Castro sought in its initial filing for injunctive relief, and now in its motion to reconsider, goes beyond the matters covered by Section 5(i) of the Service Agreement to "preserve the status quo, restrain a violation thereof and to compel specific performance," (ECF #1-2, Service Agreement, § 5(i)).

In fact, even to determine the appropriate existing "status quo" in the context of an

injunction proceeding would require this Court to decide matters left solely to the mandatory arbitration clause of the Service Agreement. In its request for injunctive relief, Castro Law contends that the "status quo" requires JGW to "return" all information (even that created by JGW) related to existing clients being served under the Service Agreement and that JGW must be ordered to discontinue all communications between JGW and existing clients. JGW's position is that the "status quo" maintains its right to utilize information on existing clients, and to continue to communicate with existing clients, pursuant to a section of the Service Agreement that explicitly provides for such continued use of information and ongoing communications:

> <u>Termination With Cause</u>. Each Party shall have the right to end this Agreement for Cause during the Term upon written notice to the other Party.
>
> \* \* \* \* \*
>
> (ii) ***Following a termination for Cause initiated by SERVICER, SERVICER shall have the option to continue to provide Services to all then-existing Applicable Clients in accordance with this Agreement in exchange for the applicable Fee for so long as SERVICER continues to provide Services in accordance with this Agreement***, and such Services continue to be supervised by an appropriately licensed attorney of LAW FIRM.

(ECF #1-2, *Service Agreement*, § 3(c)(ii)) (emphasis supplied).

Yet, to determine the appropriate "status quo," the Court would need to determine factual and legal questions related to the overall merits of the substantive claims in the case, including:

(1) whether JGW had grounds to terminate the Service Agreement "with Cause," the determination of which can only be made by deciding a host of factual and legal issues related to "Cause" as set forth in § 3(c)(i) of the Service Agreement;

(2) whether Castro Law is in breach of Section 3(c)(ii) of the Service Agreement provision allowing JGW to continue providing services (and communicating with applicable clients) by not designating "appropriately licensed attorney" supervisors after previous ones were terminated by Castro Law; and

> (3) whether the nature of JGW's communications with existing clients was compelled for it to continue servicing existing clients in the event one of the disabling conditions of "Cause" set forth in Section 3(c)(i) applies to Castro Law.

Determination of *none* of these legal issues is within the ambit of the matters covered by the limited injunction exception of the Service Agreement set forth in Section 5(i). They are all solely within the province of the mandatory mediation and arbitration provisions of Section 8(f).[6]

Here, it is clear that the primary "injunctive relief" sought by Castro Law – to prohibit JGW from communicating with existing customers with which it had a previous relationship under the Service Agreement – would require the Court to evaluate and decide factual and legal issues regarding the "Term and Termination" provisions of Section 3 of the Service Agreement

---

[6]  Another factual and legal matter intertwined with the request for injunctive relief is whether one, or both, parties are in breach of the compliance requirements of the mandatory mediation and arbitration provision itself. Throughout the briefing on this *Motion for Reconsideration* (ECF #25, ECF #27 & ECF #28) and the *Motion to Stay Pending Arbitration* (ECF #14 & ECF #22), both parties, in describing the events leading to Castro's May 26, 2024 filing of its *Demand for Arbitration and Request for Injunctive Relief*, paint a clear picture of a contentious, and disputed, history of the communications between them regarding, among *many* things: (i) the facts relating to requests for mediation made or rejected by both parties; (ii) whether the parties agreed to mediation; (iii) Castro Law's filing an injunction action in state court the very next day after JGW claims that it agreed at the outset to mediate their disputes and submit a joint letter the AAA requesting a mediator; (iv) whether Castro Law frustrated the mediation and/or arbitration process by not paying filing fees to the AAA, as indicated by a number of letters sent by the AAA to Castro; and (v) Castro Law's later position that it need not mediate any dispute because no mediation was commenced within 30 days after the issue was first brought up (perhaps caused by the absence of its payment of filing fees to the AAA).

The Court does not set forth here a detailed back-and-forth description of the evidence provided by each of the parties on these issues of performance under the mandatory mediation and arbitration provision of the Agreement, because the resolution of these issues *is itself a matter **solely** for an arbitrator to decide*. (*See* ECF #1-2, *Service Agreement*, § 8(f)) ("Each Party hereby agrees that any dispute regarding the arbitrability of this Agreement, including without limitation any dispute relating to the interpretation, applicability, enforceability, conscionability or formation of this Agreement and of this arbitration requirement set forth in this Section 8(f), shall be governed by the Federal Arbitration Act and shall be resolved exclusively by the arbitrator.").

-9-

left solely for determination by arbitration.

Notwithstanding the fact that the injunctive relief Castro Law seeks would require the Court to examine and decide issues beyond the injunction provisions of the Service Agreement, Castro Law contends in its *Motion for Reconsideration* reply (ECF #28) that this Court was *required* to hold a preliminary injunction hearing before ruling on the motion to stay pending arbitration, based on statements made in the Ohio cases of *Yudin v. Knight Indus. Corp.*, 672 N.E.2d 265, 266 (Ohio 6th Dist. Ct. App. 1996) ("[W]e hold that while a trial court may stay proceedings pending arbitration, it may not stay proceedings on a motion for preliminary injunction pending arbitration") and *State ex rel. CNG Fin. Corp. v. Nadel*, 855 N.E.2d 473, 477 (Ohio 2006) ("[W]hen a trial court is faced with a motion to stay pending arbitration and a motion for preliminary injunction, the motion for a preliminary injunction should be heard first").

Not mentioned is the text surrounding these statements, *see Yudin*, 672 N.E.2d at 266 ("The purpose of a preliminary injunction is to preserve the status quo pending final adjudication of the case upon the merits. . . . A ruling on such motion is necessary to determine if there is a need to preserve the status quo pending an arbitrator's decision on the merits") and *CNG Fin. Corp.*, 855 N.E.2d at 477 ("Notwithstanding the arbitrability of the parties' dispute, the Court has the authority to grant preliminary injunctive relief to preserve the status quo pending arbitration provided the prerequisites for injunctive relief are met").

As already stated, here, the very *definition* of the appropriate "status quo" is the subject of a factual and legal dispute to be determined solely by arbitration over whether JGW can *continue* its ongoing communications with existing clients under Section 3(c)(ii) of the Service Agreement. As the matter stands, the present "status quo" is JGW's continued servicing of

existing clients predating its invocation of the "Termination for Cause" provision of the Service Agreement. Thus, the injunctive relief now sought by Castro Law in fact appears to ask the Court to *change* the existing status quo.

Additionally, as set forth in this Court's June 11, 2024 *Order*, the relief sought in this Court by Castro Law – *including the pursuit of immediate, preliminary, and permanent injunctive relief* – is entirely subsumed in the relief it is now actively attempting to recover in arbitration, as stated in Count IV of the *Demand for Arbitration and Request for Injunctive Relief* filed with the AAA on May 26, 2024 (ECF #14-3, ¶¶ 83-91, PageID #455-456). *See Gordon v. Royal Palm Real Est. Inv. Fund I, LLLP [sic]*, No. 09-11770, 2011 WL 835941, at *6 (E.D. Mich. Mar. 8, 2011) (dismissing claims without prejudice as to certain defendants, staying the case as to others, and ordering arbitration because "it appears that the relief sought by [plaintiff] in the instant case is subsumed in the relief that he is attempting to recover in arbitration."). (*See* ECF #24, *Order*, PageID #715). The substantive factual and legal issues *can* be addressed in that proceeding.

### B. JGW's Request for Attorneys' Fees

There is one final, and new, matter to address, first raised in the parties' briefing on the *Motion for Reconsideration* – JGW's request for an award of attorney's fees based on Castro Law's alleged "continu[ing] to delay both the mediation it invoked on May 1, and its own arbitration filings" and an alleged "fail[ure] to proceed with arbitration." (ECF #27, *Defendant JGW Debt Settlement, LLC's Opposition to Plaintiff Castro Law, LLC's Motion for Reconsideration*, PageID #752).

As indicated earlier in this *Memorandum of Opinion and Order*, (*see* note 6, *supra*), there is significant dispute between the parties regarding the facts surrounding their positions on

mediation and arbitration, and accusations by both parties that it is the other party who has delayed and/or refused to participate in mediation or arbitration, conditions which may warrant an award of attorneys' fees, as set forth in Section 8(f) of the Service Agreement (reproduced again, in part, here):

> In the event a Party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other Party is entitled to costs of suit, including reasonable attorneys' and paralegals' fees and costs for having to compel arbitration or defend or enforce the award.

(ECF #1-2, *Service Agreement*, § 8(f)).

But, as is the case with every other matter now before the Court, this too is a matter left entirely to arbitration. Section 8(f) of the Service Agreement further provides:

> Each Party hereby agrees that any dispute regarding the arbitrability of this Agreement, including without limitation any dispute relating to the interpretation, applicability, enforceability, conscionability or formation of this Agreement and of this arbitration requirement set forth in this Section 8(f), shall be governed by the Federal Arbitration Act ***and shall be resolved exclusively by the arbitrator***.

(ECF #1-2, *Service Agreement*, § 8(f)) (emphasis supplied).

### III. CONCLUSION

Accordingly, for each of the above reasons, Plaintiff Castro Law's *Motion for Reconsideration of Granting JGW's Motion to Stay Pending Arbitration* (ECF #25) is DENIED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: _July 24, 2024_